Glenn R. Reiser
LOFARO & REISER, L.L.P.
55 Hudson Street
Hackensack, New Jersey 07601
(201) 498-0400

RECEIVED-CLERK
U.S. DISTRICT COURT

2005 SEP -9  P 4: 11

Of Counsel
Lawrence M. Hill
Seth C. Farber
DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, New York 10019

*Attorneys for Defendant Deutsche Bank AG*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK DIVISION

| | |
|---|---|
| JOHN L. ALFANO,<br><br>    Plaintiff,<br><br>  vs.<br><br>BDO SEIDMAN, L.L.P., DEUTSCHE BANK AG, SIDLEY AUSTIN BROWN & WOOD, f/k/a BROWN & WOOD, LLP, R.J. RUBLE PRESIDIO ADVISORS, LLC, PRESIDIO GROWTH, LLC, JOHN LARSON, ABC CORPORATIONS 1-20, FICTITIOUS COMPANIES, and JOHN DOES 1-20, FICTITIOUS PERSONS,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **DEUTSCHE BANK AG'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 9 U.S.C. § 205**<br><br>**CIVIL ACTION NO.:** *05-4430 (FJ1)* |

**TO:    WILLIAM T. WALSH, CLERK**
**UNITED STATES DISTRICT COURT**
**MARTIN LUTHER KING, JR. FEDERAL BUILDING & COURTHOUSE**
**50 WALNUT STREET**
**NEWARK, NEW JERSEY 07102**

**PLEASE TAKE NOTICE** that defendant Deutsche Bank AG hereby

removes the civil action described below to this Court pursuant to 9 U.S.C. § 205,

because it relates to an arbitration agreement falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").

## I.    BACKGROUND AND PROCEDURAL HISTORY

1.    On or about September 24, 2004, a complaint captioned John L. Alfano versus B.D.O. Seidman, L.L.P., Deutsche Bank AG, Sidley Austin Brown & Wood, f/k/a Brown & Wood, LLP, R.J. Ruble, Presidio Advisors, LLC, Presidio Growth, LLC, John Larson, ABC Corporations 1-20, Fictitious Companies, and John Does, 1-20, Fictitious Persons, Case No. L-12369-04, was filed in the Superior Court of New Jersey Law Division: Bergen County ("Complaint" or "Compl.").

2.    Plaintiff served the Complaint by hand on Deutsche Bank AG ("Deutsche Bank") on October 20, 2004.  On or about March 16, 2005, the Superior Court entered a consent order extending the time for all defendants to answer to May 20, 2005.

3.    On or about May 21, 2005, the Superior Court dismissed the Complaint without prejudice for lack of prosecution with respect to some of the defendants. Unaware of the dismissal, on or about May 24, 2005, plaintiff's counsel filed a proposed consent order extending the time for the parties to answer until August 1, 2005, which was entered by the Superior Court on or about June 2, 2005.  On or about June 8, 2005, plaintiff filed a motion to reinstate the Complaint against the dismissed defendants, which was granted on June 24, 2005. Thereafter, on or about August 1, 2005, the Superior Court entered another consent order extending the time for defendants to answer until September 12, 2005.

4.      Copies of the Summons, the Complaint and all process, pleadings, and orders that have been served on or received by Deutsche Bank in this action are attached hereto as Exhibit A, as required by 28 U.S.C. § 1446(a).

5.      Defendant Deutsche Bank will file promptly a copy of this Notice of Removal with the clerk of the New Jersey State Court where the action has been pending.

## I.      THE COMPLAINT

6.      Plaintiff John L. Alfano participated in a tax-advantaged investment strategy known as Offshore Portfolio Investment Strategy ("OPIS") in order to minimize the taxes he paid on the proceeds of the sale of his business. Compl. ¶¶ 2, 20, 62.[1]  As a result of his investment in the OPIS strategy, plaintiff claimed more than $100 million in losses, which he used to offset the gains he realized from the sale of his business in 1998. *Id.* at ¶ 66.  The Internal Revenue Service ("IRS") later challenged plaintiff's losses. *Id.* at ¶ 20.  Plaintiff thereafter sued BDO Seidman, LLP ("BDO"), which acted as his accountant and financial advisor; Sidley Austin Brown & Wood LLP, f/k/a Brown & Wood LLP ("Sidley"), as well as a Sidley partner, R.J. Ruble ("Ruble"), which acted as his legal advisors; Presidio Advisors, LLC; Presidio Growth LLC and John Larson (collectively, "Presidio"), which acted as his investment advisor; and Deutsche Bank, the financial institution that executed certain transactions that were part of plaintiff's OPIS strategy. *Id.* at ¶ 1.

7.      The Complaint alleges fourteen cause of action: (1) fraud against all defendants; (2) negligence against all defendants; (3) a New Jersey civil RICO claim against all defendants; (4) civil conspiracy against all defendants; (5) liability under

---

[1]      Deutsche Bank does not admit any of the factual allegations in the Complaint and expressly reserves the right to contest those allegations at the appropriate time.

Restatement (Second) of Torts § 552; (6) breach of contract against BDO and Deutsche Bank; (7) breach of contract accompanied by fraudulent act as to BDO; (8) constructive fraud or negligent misrepresentation against all defendants; (9) promissory estoppel against all defendants; (10) violation of New Jersey Consumer Fraud Act against all defendants; (11) breach of fiduciary duties against all defendants; (12) aiding and abetting against all defendants except BDO; (13) unjust enrichment/disgorgement against all defendants; and (14) professional negligence/malpractice as to BDO, Sidley, and Ruble. Compl. ¶¶ 162-282.

## II.     JURISDICTION AND VENUE

8.     This Court has jurisdiction under Section 203 of the Convention, because "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203.

9.     Under Section 205 of the Convention, "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending." 9 U.S.C. § 205.

10.     Pursuant to Section 202 of the Convention, "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title [9 U.S.C. § 2], falls under the Convention. An

agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States." 9 U.S.C. § 202.

11.     Pursuant to 9 U.S.C. § 205, removal is proper "at any time before the trial [of the action pending in a State court]."

12.     Venue is proper in this district because this Court is the United States District Court for the district and division embracing the place where the removed action has been pending. 9 U.S.C. § 205.

13.     All of the named defendants that have been served with the Complaint have consented to this Notice of Removal. The consents are being filed concurrently herewith.

## III.  GROUNDS FOR REMOVAL

14.     According to the Complaint, plaintiff's OPIS strategy involved the purchase of Deutsche Bank AG stock and options. Compl. ¶ 63. To execute these stock transactions, plaintiff opened a securities brokerage account through Deutsche Bank Securities Inc. ("DBSI"), a Deutsche Bank subsidiary, by entering into a Customer's Agreement. (A copy of the Customer's Agreement between DBSI and John L. Alfano, dated October 14, 1998, is attached hereto as Exhibit B.)

15.     The Customer's Agreement contains a mandatory arbitration clause at Paragraph 14 that provides, in relevant part:

> The UNDERSIGNED AGREES, and by carrying an Account of the Undersigned you agree, that except as inconsistent with the foregoing, all controversies which may arise between us concerning any transaction of [*sic*] construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be determined pursuant to the rules then in effect of the National Association of Securities Dealers, Inc., as the undersigned you may elect. If the undersigned fails to make an election, then you may make such election. The award of the arbitrators or of the majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state, or federal, having jurisdiction.

(*See* Customer's Agreement, ¶ 14, attached at Exhibit B.)

16.     This broad clause encompasses all of plaintiff's claims against Deutsche Bank AG.  Deutsche Bank AG can enforce the arbitration clause against plaintiff for several reasons including, but not limited to, principles of agency and estoppel.

17.     First, because DBSI was acting as Deutsche Bank's agent, Deutsche Bank can enforce the arbitration clauses between DBSI and plaintiff.  As mentioned above, plaintiff used the DBSI brokerage account to implement the OPIS transaction, which entailed a series of securities transactions involving Deutsche Bank stock.  *See* Compl. ¶ 63.  In connection with certain of these transactions, plaintiff countersigned a Confirmation from Deutsche Bank that said in boldface-type capital letters:

> DEUTSCHE BANK AG IS NOT REGISTERED AS A BROKER-DEALER UNDER THE U.S. SECURITIES EXCHANGE ACT OF 1934.  DEUTSCHE BANK SECURITIES INC. HAS ACTED AS DEUTSCHE BANK AG'S AGENT IN CONNECTION WITH THIS TRANSACTION.

(A copy of the Confirmation between Deutsche Bank AG and John L. Alfano, dated December 15, 1998, is attached as Exhibit C.)

18.     Moreover, plaintiff countersigned a DBSI letter, dated October 12, 1998, that identified Deutsche Bank AG as DBSI's "parent company" and advised plaintiff that DBSI was "act[ing] as agent" for its affiliates[2] in connection with the OPIS transactions. (*See* Letter Agreement between DBSI and John L. Alfano, dated October 12, 1998, attached hereto as Exhibit D.) Accordingly, because of this agency relationship, Deutsche Bank AG can compel plaintiff to arbitrate his claims. *See, e.g., JLM Indus. Inc. v. Stolt-Nielsen SA*, 387 F. 3d 163, 177-78 (2d Cir. 2004); *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000).

19.     Second, Deutsche Bank can enforce the arbitration agreement because plaintiff's claims against Deutsche Bank are based, in part, on the contract governing the brokerage account (*i.e.*, the Customer's Account). *See, e.g.*, Compl. ¶ 181; *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757-58 (11th Cir. 1993) (where claims against nonsignatory parent were "intimately founded in and intertwined with" a contract containing an arbitration clause, signatory was estopped from refusing to arbitrate those claims).[3]

20.     Plaintiff also raises allegations of substantially interdependent and concerted misconduct by Deutsche Bank. The Complaint does not distinguish which conduct should be attributed to the various Deutsche Bank entities that were involved in the execution of his OPIS strategy. Instead, the Complaint alleges that Deutsche Bank

---

[2]     A parent is an affiliate of any of its subsidiaries. BLACK'S LAW DICTIONARY (8th ed. 2004) (defining "affiliate" as "1. A corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, *parent* or sibling corporation.") (emphasis added); *see also Harold Ives Trucking Co. v. Pickens*, 355 Ark. 407, 411 (2003) (citing Black's definition with approval in finding that the "ordinary and usually accepted meaning" of the term "affiliate" includes a parent company).

[3]     Moreover, where allegations against a parent company are inherently inseparable from claims against its subsidiary, "a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *See, e.g., J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988).

may be responsible for the conduct that is attributable to its subsidiary, DBSI, the entity with which plaintiff entered the Customer's Agreement.

21.     The arbitration provision contained in the Customer's Agreement falls under the Convention because it arises out of a relationship between plaintiff and Deutsche Bank that "involve[d] property located abroad, envisage[d] performance or enforcement abroad, or ha[d] some other reasonable relation with one or more foreign states." 9 U.S.C. § 202.

22.     First, the relationship between Deutsche Bank and plaintiff involved the "purchase, directly or indirectly, of Deutsche Bank, AG stock and put and call options on Deutsche Bank stock" on the Frankfurt Stock Exchange. Compl. ¶ 63. In particular, the Complaint alleges that on October 30, 1998, Alfano purchased 102,577 shares of Deutsche Bank stock and a call option on 2,072,042 shares of Deutsche Bank stock. *Id.*

23.     Second, the relationship between plaintiff and Deutsche Bank envisaged performance abroad because a transaction confirmation signed by the plaintiff identifies "Deutsche Bank AG acting through its Frankfurt branch" as the counterparty; provides for notice to be given to Deutsche Bank AG in Frankfurt, Germany; calls for payments to be directed to Deutsche Bank AG in Frankfurt, Germany; and requires the resale of the shares of common stock of Deutsche Bank AG only on one of two German exchanges — the Frankfurt Stock Exchange or Xetra (a German electronic exchange). (*See* Confirmation, attached at Exhibit C.)  In addition, plaintiff signed an agreement stating in pertinent part, "we agree to resell the Securities only through the Frankfurt Stock Exchange in a transaction complying with Rule 904 of the Regulation under the Act." (*See* Letter Agreement, attached as Exhibit D.)

24.    Third, the relationship between plaintiff and Deutsche Bank had a reasonable relation with Germany.  As previously discussed, plaintiff agreed to arbitrate with "you" – a term defined to include, among other things, "affiliates" – and "affiliates of Deutsche Bank" in turn is defined to include Deutsche Bank AG.

25.    Because the Customer's Agreement containing the arbitration clause arises out of this relationship, this case falls within the Convention, and removal of this action is therefore proper under 9 U.S.C. § 205, as many courts have determined in similar circumstances.  *See, e.g., Keeter, et al. v. KPMG LLP, et al.,* No. 1:04-cv-3759-WSD, slip op. at 4-5 (N.D. Ga. May 16, 2005) (attached as Exhibit E); *Hansen v. KPMG LLP, et. al.,* SA CV 04-010525-GLT (MANx), slip op. at 2-4 (C.D. Cal. Mar. 29, 2005) (attached as Exhibit F); *Chew et al. v. KPMG LLP, et al.,* No. 3:04CV748BN, slip op. at 11-12 (S.D. Miss. Jan. 6, 2005) (attached as Exhibit G); *Reddam et al. v. KPMG LLP, et al.,* No. SA CV 04-1227-GLT (MANx), slip op. at 2-4 (C.D. Cal Dec. 15, 2004) (attached as Exhibit H).

Respectfully submitted,

Dated:  September 9, 2005

LOFARO & REISER LLP

By: _____
Glenn R. Reiser
55 Hudson Street
Hackensack, NJ 07601

*Of Counsel*
Lawrence M. Hill
Seth C. Farber
DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, New York 10019

*Attorneys for Defendant Deutsche Bank AG*